

| | | **MAHESHA P. SUBBARAMAN** |
| | | mps@subblaw.com |

| 612-315-9210 (Phone/Fax) | 222 S. 9th Street, Suite 1600 — Minneapolis, MN 55402 | www.subblaw.com |

July 22, 2021                                                    *Electronically Filed & Served*

Clerk of Court
U.S. District Court for the District of Idaho
McClure Federal Bldg. & U.S. Courthouse
550 W. Fort Street
Boise, ID 83724

> Re:   *McCallister v. Evans, et al.*, No. 4:20-cv-112-DCN (D. Idaho)
>
> Citation of Supplemental Authorities Under Bankruptcy Rule 8014(f)

To the Clerk of Court—

As counsel for Trustee-Appellant Kathleen McCallister, I write to spotlight a "pertinent and significant authorit[y]" decided after briefing in the above-captioned bankruptcy appeal (*Evans*). Fed. Bankr. R. 8014(f).

On July 20, 2021, in *In re Harmon*, BAP No. 20-1168, slip op. (BAP 9th Cir.) (attached), the U.S. Bankruptcy Appellate Panel of the Ninth Circuit decided in Trustee McCallister's favor on the same question now before this Court in *Evans*: "whether a standing chapter 13 trustee is entitled to her statutory fee upon receipt of each plan payment" even if "[a] case is dismissed prior to confirmation." *Id.* at 2.

The BAP answers 'yes' for three main reasons:

**First**: 28 U.S.C. §586(e)'s "plain meaning" is that a chapter 13 trustee "obtains payment" of her fee "when she collects the fee." *Id.* at 14. A chapter 13 trustee "[does] not … gather the fee and hold it pending some future event"—a reality confirmed by §586(e)'s context, related statutes, and the statutory scheme. *Id.* at 13-19. This analysis supports the Trustee's plain-text reading of §586(e). *See* Trustee Br.12-19.

**Second**: Section 586(e) "is not made ambiguous when construed with [11 U.S.C.] §1326." BAP Op.22. Section 1326 controls "amounts allocated to pay creditors and administrative claims under the plan, **after** the standing trustee has collected her percentage fee." *Id.* at 21-22 (bold added). Section 1326 thus cannot be read to "require[] the trustee to return [her] percentage fee to a debtor upon dismissal." *Id.* This analysis supports the Trustee's plain-text reading of §1326. *See* Trustee Br.25-28.



**Third**: 11 U.S.C. §1226 (i.e., Chapter 12) "do[es] not create a negative inference" that chapter 13 trustee fees are returnable. BAP Op.23. Rather, §1226 simply "reiterat[es] the fact that once plan payments are made to a standing trustee, she shall 'collect such percentage fee' from those funds." *Id.* at 24. This analysis supports the Trustee's view that Chapter 12 and Chapter 13 each "solves in its own way the problem of guaranteeing percentage-fee collection before plan confirmation." Trustee Br.29-30.

The Trustee therefore respectfully suggests that the Court follow *Harmon* and reverse the bankruptcy court here on this basis.

Sincerely,

/s/Mahesha P. Subbaraman

Mahesha P. Subbaraman
Subbaraman PLLC
222 S. 9th Street, Suite 1600
Minneapolis, MN 55402
(612) 315-9210
mps@subblaw.com

*Counsel for Trustee-Appellant
Kathleen A. McCallister*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 22, 2021, I filed the foregoing letter electronically through the CM/ECF system, causing the following parties or counsel to be electronically served as more fully reflected on the Notice of Electronic Filing:

- Alexandra O. Caval—*Counsel for Debtors-Appellees Roger A. Evans & Lori A. Steedman*—alex@cavallawoffice.com

- Kathleen A. McCallister & Jeffrey P. Kaufman—*Counsel for Trustee-Appellant Kathleen A. McCallister*—kam@kam13trustee.com

/s/Mahesha P. Subbaraman



**FILED**

## NOT FOR PUBLICATION

JUL 20 2021

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>DOUGLAS JEROME HARMON;<br>CHRISTINE RENNA HARMON,<br>             Debtors. | BAP No. ID-20-1168-LSG<br><br>Bk. No. 1:19-bk-01424-TLM |
| KATHLEEN A. MCCALLISTER, Chapter 13 Trustee,<br>             Appellant,<br>v.<br>DOUGLAS JEROME HARMON;<br>CHRISTINE RENNA HARMON,<br>             Appellees. | **MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the District of Idaho
Terry L. Myers, Bankruptcy Judge, Presiding

Before: LAFFERTY, SPRAKER, and GAN, Bankruptcy Judges.

Memorandum by Judge Gan
Concurrence by Judge Spraker
Dissent by Judge Lafferty

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, see Fed. R. App. P. 32.1, it has no precedential value, see 9th Cir. BAP Rule 8024-1.

## INTRODUCTION

In this appeal we are confronted with an issue of first impression in the Ninth Circuit: whether a standing chapter 13[1] trustee is entitled to her statutory fee upon receipt of each plan payment, or if she must hold her fee pending confirmation, and return it to the debtor if the case is dismissed prior to confirmation.

Chapter 13 trustee Kathleen McCallister ("Trustee") appeals the bankruptcy court's order denying payment of her statutory fee after dismissal of the debtors' case and the court's denial of her motion for reconsideration. The bankruptcy court found an apparent conflict between § 586(e), which directs a standing trustee to collect her statutory fee from all payments made under the plan, and § 1326(a)(2), which requires the trustee to retain plan payments until confirmation and return those payments to the debtor after deducting unpaid administrative claims if the case is dismissed prior to confirmation. Construing the statutes together, the bankruptcy court held that § 586(e) directs the trustee to "collect and hold" the fee, while § 1326(a)(2) directs when and how to disburse payments, including the statutory fee.

---

[1] Unless specified otherwise, all references to "Section 586" or "§ 586," or any subsection thereof, refer to Title 28 of the United States Judicial Code. All other chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. "Rule" references are to the Federal Rule of Bankruptcy Procedure.

Other bankruptcy courts that have addressed this issue have determined that because § 586(e)(2) does not indicate when a trustee must collect the fee, or expressly state what happens if a case is dismissed prior to confirmation, the statute is ambiguous. We find no ambiguity in the language of § 586(e), the specific context in which the language is used, or the broader context of the statute as a whole. The plain language of § 586(e)(2) means that a standing trustee is entitled to the statutory fee upon receipt of every payment under the plan.

Furthermore, the bankruptcy court's ruling that § 586(e) requires a trustee to "collect and hold" the fee is not a reasonable interpretation because neither § 1326(a)—nor any other provision of the Bankruptcy Code—provides for disbursement of the fee. Section 586(e)(2) is the only statute that provides for payment of a standing trustee's fee, and it simply mandates that a trustee "shall collect such percentage fee from all payments received . . . under plans."

We are aware that both § 1194(a)(3) and § 1226(a)(2) expressly provide that a standing trustee may retain the fee upon a preconfirmation dismissal, but we do not apply the negative inference canon or the canon against surplusage to contravene plain language, or where doing so would create its own ambiguity and surplusage. And because § 1326 was enacted prior to § 1194 and § 1226, the weight of any negative inference is greatly reduced.

Section 586(e) establishes a percentage fee which must be collected from all chapter 13 plan payments to compensate standing trustees for administrative tasks which they must perform regardless of whether a plan is confirmed. The statutory fee operates independently of the compensation and priority schemes of the Bankruptcy Code.

We hold that a standing trustee is entitled to collect the statutory fee under § 586(e) upon receipt of each payment under the plan and is not required to disgorge the fee if the case is dismissed prior to confirmation. Accordingly, we VACATE and REMAND for entry of an order consistent with this decision.

## FACTUAL BACKGROUND

Debtors Douglas and Christine Harmon ("Debtors") filed a chapter 13 case in December 2019. They did not confirm a plan, and in April 2020, the bankruptcy court granted their voluntary motion to dismiss the case. After the dismissal, Debtors' counsel filed an application for compensation of $1,839. Trustee filed a response stating that she had funds on hand of $2,178.03 and had no objection to counsel's fee request. No other party objected to the application, and a proposed order was submitted to the court, signed by Debtors' counsel and Trustee. The order, as submitted, provided:

> IT IS HEREBY ORDERED that Counsel's request for attorney's fees is hereby approved in the amount of $1839 with a balance due of $1839. Trustee is authorized to pay said fees from funds on hand on the date of dismissal with the balance of the funds

4

on hand to be refunded to the Debtor(s). Said disbursement shall be subject to Trustees [sic] fees.

The bankruptcy court modified the order by striking out the last sentence and adding a note stating: "[MODIFICATION MADE BY THE COURT AS THE LANGUAGE AND RESULT ARE INCONSISTENT WITH *In re Evans*, [615 B.R. 290 (Bankr. D. Idaho 2020)],[2] and *In re Leal*, 20-00068-TLM. ORDER OTHERWISE AGREED TO BY THE PARTIES.]"[3]

Trustee timely moved for reconsideration of disallowance of her fee. She argued that *Evans* was wrongly decided, and she proffered an interpretation of the relevant statutes that required her to be paid her statutory fee regardless of whether a chapter 13 plan was confirmed.

The bankruptcy court denied Trustee's motion without a hearing, issuing a written memorandum decision. *In re Harmon*, No. 19-01424-TLM, 2020 WL 6037759 (Bankr. D. Idaho June 23, 2020). Trustee timely appealed.

---

[2] As discussed below, in *Evans*, the bankruptcy court held that, in a chapter 13 case that was dismissed pre-confirmation, the trustee was required to return her statutory fee to the debtor along with all undistributed plan payments that were in her possession and that were not yet due and owing to creditors. 615 B.R. at 303. Trustee appealed that decision to the United States District Court for the District of Idaho. That appeal, *McAllister v. Evans*, No. 4:20-cv-00112-DCN, filed March 4, 2020, remains pending. According to the court docket, as of July 19, 2021, briefing had been completed, but no decision had yet been issued.

[3] There is no written decision in *Leal*; Judge Myers delivered his ruling from the bench, denying payment of statutory fees to the trustee in a chapter 13 case dismissed preconfirmation, based upon the reasoning in *Evans*.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court erred by holding that Trustee was not entitled to a statutory fee under § 586(e) in a case that was dismissed prior to confirmation.

## STANDARD OF REVIEW

We review de novo a bankruptcy court's interpretation of the Bankruptcy Code. *Reswick v. Reswick (In re Reswick)*, 446 B.R. 362, 365 (9th Cir. BAP 2011). De novo means review is independent, with no deference given to the bankruptcy court's conclusion. *See First Ave. W. Bldg., LLC v. James (In re Onecast Media, Inc.)*, 439 F.3d 558, 561 (9th Cir. 2006).

## DISCUSSION

Neither this Panel nor the Ninth Circuit Court of Appeals has addressed the question before us. The majority of bankruptcy courts which have confronted this issue have concluded, like *Evans*, that § 586(e) and § 1326(a) require a standing trustee to "collect and hold" the percentage fee and return it to a debtor if the case is dismissed prior to confirmation. *See, e.g. In re Lundy*, No. 15-32271, 2017 WL 4404271 (Bankr. N.D. Ohio Sept. 29, 2017); *In re Dickens*, 513 B.R. 906 (Bankr. E.D. Ark. 2014); *In re Acevedo*, 497 B.R. 112 (Bankr. D.N.M. 2013); *In re Rivera*, 268 B.R. 292 (Bankr. D.N.M.

2001), *aff'd sub nom.*, *Skehen v. Miranda (In re Miranda)*, 285 B.R. 344 (table), 2001 WL 1538003 (10th Cir. BAP Dec. 4, 2001).

However, we agree with the minority position that the language of § 586(e) unambiguously requires a standing trustee to obtain payment of the percentage fee upon receipt of each plan payment. *See Nardello v. Balboa (In re Nardello)*, 514 B.R. 105 (D.N.J. 2014); *In re Soussis*, 624 B.R. 559 (Bankr. E.D.N.Y. 2020). The plain language interpretation is confirmed by the context of § 586(e)(2), related fee collection statutes, and the larger statutory scheme of the Bankruptcy Code. And logic dictates that once the trustee collects her fee "from" each payment she receives, the fee is no longer part of the plan payments which must be retained by the trustee under § 1326(a)(2) and disbursed to creditors pursuant to the plan.

## A.    The History Of The U.S. Trustee Pilot Program And § 586

Congress enacted § 586 as part of the U.S. Trustee Pilot Program in 1978. *See* H.R. Rep. No. 95-595, at 1 (1977). The program allowed the United States Trustee ("UST") in certain districts to appoint private standing trustees to oversee and administer chapter 13 cases. *See id.* at 4. The purpose of the program was to "render the separation of administrative and judicial functions complete" resulting in a "fairer, more equitable and more effective system." *Id.* at 115. Because of the success of the program, Congress expanded it nationwide in 1986. H.R. Rep. No. 99-764, at 19 (1986).

Section 1302 provides that if the UST has appointed an individual to serve as standing trustee in chapter 13 cases, that individual shall serve as trustee when a chapter 13 case is filed. But if the UST has not appointed a standing trustee, it must appoint one disinterested person to serve as trustee in the case. Regardless of whether a trustee is a standing trustee, or is appointed under § 1302, she must perform the duties required by the Bankruptcy Code, under the supervision of the UST. *See* § 1302(b); § 586(a)(3). The major distinction between a trustee appointed under § 1302 and a standing trustee is the method of compensation.

A trustee appointed under § 1302 may be awarded by the bankruptcy court reasonable compensation for actual, necessary services and reimbursement for actual, necessary expenses. § 330. Such compensation is an allowed administrative expense under § 503(b)(2) and entitled to priority distribution under § 507(a)(2). Thus, a trustee appointed under § 1302 must be paid from distributions under a confirmed plan, and if a plan is not confirmed, she may deduct her compensation prior to returning plan payments to the debtor. § 1326(a)(2).

In contrast, standing trustees are not compensated under the Bankruptcy Code and their compensation is not subject to adjustment by the bankruptcy court.[4] *See* § 586(e); § 326(b). Under § 586(e)(1), the Attorney

---

[4] The dissent cites legislative history from 1977 which stated that a standing trustee's compensation is fixed by § 586, but payable under proposed § 1326(a). However, as part of expanding the U.S. Trustee Pilot Program nationwide in 1986,

8

General, after consultation with the UST, fixes the maximum annual compensation for standing trustees and sets a percentage fee not to exceed a statutory limit. Section 586(e)(2) directs the standing trustee to "collect such percentage fee from all payments received by such individual under plans . . . for which such individual serves as standing trustee."

## B.    The Bankruptcy Court's Decision And *Evans*

In the present case, the bankruptcy court denied payment of Trustee's statutory fee based on the reasoning of *In re Evans*, 615 B.R. 290. In *Evans*, the Idaho bankruptcy court determined that § 586(e) conflicts with § 1326(a)(2) because § 586(e) directs a standing trustee to collect her fee from all payments received, but § 1326(a)(2) directs a trustee, in a case dismissed prior to confirmation, to return to the debtor any payments not yet due and owing to creditors. *Id.* at 293.

---

Congress amended §§ 1302 and 1326. The legislative history of those amendments demonstrates congressional intent to separate a standing trustee's compensation from the Bankruptcy Code:

> Section 222 conforms 11 U.S.C. 1302(a) to the fact that it is the U.S. Trustee who will have appointed the standing trustee, and not the court. 11 U.S.C. 1302(d) and (e) are stricken for this reason. Appointment **and compensation** of a standing trustee will be governed by [28] U.S.C. 586.

. . .

> Section 223 conforms 11 U.S.C. 1326(b) to the fact that [28] U.S.C. 586 will govern the appointment **and compensation** of a standing trustee, and not 11 U.S.C. 1302.

H.R. Rep. No. 99-764, at 29, *reprinted in* 1986 U.S.C.C.A.N. 5227, 5247. (emphasis added).

The court found § 586(e) to be ambiguous because it is "not clear from the statutory language whether Congress intended to allow a trustee to collect her fee on all payments received pre- or post-confirmation, or intended to limit a trustee's fee to a percentage of post-confirmation disbursements." *Id.* at 293-94. The court stated that nothing in § 586 contemplates that the percentage fee is irrevocable once the trustee collects it, and noted that unlike a similar provision in chapter 12, § 1326(a)(2) does not expressly permit a standing trustee to deduct her fee prior to returning plan payments to a debtor. *Id.* at 296-97.

Therefore, the bankruptcy court held that § 586(e)(2) "directs the trustee to collect and hold the payments pending plan confirmation and the source from which to collect the percentage fee, while § 1326(a)(2) tells the trustee when and how to disburse payments before or after confirmation." *Id.* at 303.

## C. Section 586(e)(2) Entitles A Standing Trustee To Her Statutory Fee Upon Receipt of Each Plan Payment.

Section 586(e)(2) provides that a standing trustee "shall collect such percentage fee from all payments received by such individual under plans . . . for which such individual serves as standing trustee." We must interpret whether this language, when construed with § 1326,[5] provides for

---

[5] Section 1326 states:

(a)(1) Unless the court orders otherwise, the debtor shall commence making payments not later than 30 days after the date of the filing of the plan or the order for relief, whichever is earlier, in the amount—

a standing trustee to keep the fee she collects or requires her to hold it until confirmation and return it to a debtor if the plan is not confirmed.

### 1. Rules of Statutory Construction

The "'fundamental canon of statutory construction' [is] that words generally should be 'interpreted as taking their ordinary . . . meaning . . . at the time Congress enacted the statute.'" *New Prime Inc. v. Oliveira*, 139 S.Ct. 532, 539 (2019) (quoting *Wis. Cent. Ltd. v. United States*, 138 S.Ct. 2067, 2074 (2018)). Thus, our interpretation starts "where all such inquiries must begin: with the language of the statute itself." *Unites States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989).

"When the statute's language is plain, the sole function of the courts—at least where the disposition required by the texts is not absurd—is to enforce it according to its terms." *Lamie v. United States Tr.*, 540 U.S.

---

(A) proposed by the plan to the trustee;
. . . .
    (2) A payment made under paragraph (1)(A) shall be retained by the trustee until confirmation or denial of confirmation. If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan as soon as is practicable. If a plan is not confirmed, the trustee shall return any such payments not previously paid and not yet due and owing to creditors pursuant to paragraph (3) to the debtor, after deducting any unpaid claim allowed under section 503(b).
. . . .
(b) Before or at the time of each payment to creditors under the plan, there shall be paid—
    (1) any unpaid claim of the kind specified in section 507(a)(2) of this title;
    (2) if a standing trustee appointed under section 586(b) of title 28 is serving in the case, the percentage fee fixed for such standing trustee under section 586(e)(1)(B) of title 28[.]

526, 534 (2004) (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank., N.A.*, 530 U.S. 1, 6 (2000)). We "must presume that [Congress] says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank. v. Germain*, 503 U.S. 249, 253-54 (1992).

If the statute is unambiguous, "judicial inquiry is complete." *Id.* at 254 (quoting *Rubin v. United States*, 449 U.S. 424, 430 (1981)). "Our inquiry must cease if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'" *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) (quoting *Ron Pair Enters., Inc.*, 489 U.S. at 240).

If the language is ambiguous, we "may look to other sources to determine congressional intent, such as the canons of construction or the statute's legislative history." *United States v. Nader*, 542 F.3d 713, 717 (9th Cir. 2008) (citing *Jonah R. v. Carmona*, 446 F.3d 1000, 1005 (9th Cir. 2006)). We determine whether a statute is ambiguous by "reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson*, 519 U.S. at 341.

Unless otherwise defined, we interpret words according to their "ordinary, contemporary, common meaning." *Wilderness Soc'y v. U.S. Fish & Wildlife Serv.*, 353 F.3d 1051, 1060 (9th Cir. 2003) (en banc), *amended on reh'g en banc*, 360 F.3d 1374 (9th Cir. 2004) (quoting *United States v. Smith*, 155 F.3d 1051, 1057 (9th Cir. 1998)). "A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme—because the same terminology is used elsewhere in a context that makes its

meaning clear, or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988).

## 2. The Text of § 586(e)(2) is Unambiguous

The term "collect such percentage fee" is not defined in the statute. Therefore, we first consider the common sense meaning of the term to determine whether it is ambiguous. *Ariz. Health Care Cost Containment Sys. v. McClellan*, 508 F.3d 1243, 1249 (9th Cir. 2007); *Wilderness Soc'y*, 353 F.3d at 1061 (using dictionaries to determine the common sense meaning of words not defined in a statute).

Black's Law Dictionary (5th ed. 1979) defines collect as "[t]o receive payment. To collect a debt or claim is to obtain payment or liquidation of it . . . ." If § 586(e)(2) merely required Trustee to "collect" certain funds, as the dissent suggests, the term might reasonably be construed to mean gather or accept those funds. But the statute specifically mandates that a trustee "collect such percentage fee" from all plan payments.

Fee is defined as "a charge fixed by law for services of public officers or for use of a privilege under control of government." Black's Law Dictionary (5th ed. 1979).[6] The plain meaning of "shall collect such percentage fee" is not that a standing trustee gathers the fee and holds it

_____

[6] Merriam Webster's Collegiate Dictionary, (10th ed. 1998) similarly defines collect as "to claim as due and receive payment for" and fee as "a fixed charge" or "a sum paid or charged for a service."

13

pending some future event. The plain meaning is that she obtains payment of the statutory charge, and a debtor pays it to the trustee, when she collects the fee from each payment under the plan.

Unlike a trustee appointed under § 1302, a standing trustee's fee is not subject to bankruptcy court approval or adjustment. There is no additional step in § 586(e) for a standing trustee to obtain compensation beyond collection of the fee, and nothing in the Bankruptcy Code provides for payment of a standing trustee's fee.

The language "shall collect such percentage fee" is plain and not absurd. Thus, we are required "to enforce it according to its terms." *Lamie*, 540 U.S. at 534.

### 3. The Context of § 586, Related Statutes, and the Statutory Scheme Confirm The Statute's Plain Meaning

Although "shall collect such percentage fee" is unambiguous, the context of the statute, related statutes, and the Bankruptcy Code as a whole, confirm the plain meaning of the text.

### a. The Context of § 586

Section 586(e) does not limit the standing trustee's obligation to collect fees to those cases in which a plan is confirmed. A standing trustee must obtain payment of the fee "from all payments received . . . under plans." Because § 1326(a)(1) requires chapter 13 debtors to begin plan payments within 30 days of filing the petition, a trustee will necessarily receive preconfirmation plan payments from which she must collect the

14

percentage fee. The statute does not specify when the trustee must collect the fee, but this does not make the statute ambiguous. The trustee's obligation to collect the fee is cognizable upon receipt of each payment, regardless of whether the plan has been confirmed.

The trustee's ability to keep the fees she collects is limited by § 586(e) in only one way. The statute requires a standing trustee to pay collected fees which exceed certain compensation limits to the UST. § 586(e)(2). Those amounts must be deposited in the United States Trustee System Fund and cannot be refunded. 28 U.S.C. § 589a(b)(8); s*ee Knote v. United States*, 95 U.S. 149, 154 (1877) ("Moneys once in the treasury can only be withdrawn by an appropriation by law."). There is nothing in § 586 that provides for the fees to be returned to a debtor or paid to anyone else once collected by the trustee.

The formula used to determine the amount of excess fees supports our interpretation that a standing trustee obtains payment of the percentage fee upon receipt of each plan payment. The limitations in § 586(e)(2)(A) and (B) are based on fees collected from all plan payments. Section 586(e)(2)(A) requires a standing trustee to pay the UST "any amount by which the actual compensation of such individual exceeds 5 per centum upon all payments received under plans . . . ." Section 586(e)(2)(B) requires a trustee to pay the UST any amount by which the collected fees for all such cases exceeds (1) the maximum annual compensation set by the Attorney General; and (2) the trustee's actual, necessary expenses.

15

Since a standing trustee's maximum annual compensation and expenses are based on all fees collected, her compensation is effectively capped at less than the amount fixed by the Attorney General if she is required to return some fees to debtors. The formula thus presumes that a standing trustee keeps the fees she collects. Section 586(e)(2) cannot be construed to require a trustee to "collect and hold" the percentage fee because the same statute mandates payment of excess fees to the UST and a trustee cannot pay excess fees to the UST unless she has first obtained ownership of those fees.

Additionally, the language of § 586(e)(2) dictates that a standing trustee must collect the percentage fee "from" all payments received under plans, including those made prior to confirmation. This means the fee is separated from other amounts proposed by a plan to be paid to creditors. There is no provision in § 586 or the Bankruptcy Code that causes the percentage fee to be recombined with the plan payments allocated for creditors after it has been collected. *In re Soussis*, 624 B.R. at 572.

An interpretation that the fee remains part of the plan payments retained under § 1326(a) necessarily contravenes the directive that a trustee shall collect the fee "from" plan payments. And an interpretation that the fee is not "collected" until confirmation contravenes the directive to collect the fee from "all payments" under plans.

### b.    Related Statutes

Our construction is also confirmed by the broader context of other bankruptcy fee statutes. Section 589a of title 28 provides that certain bankruptcy filing fees "collected" under 28 U.S.C. § 1930 shall also be deposited into the United States Trustee System Fund. Pursuant to 28 U.S.C. § 1930(e), the clerk of the court may "collect only the fees prescribed." We do "not lightly assume that Congress silently attaches different meanings to the same term in the same or related statutes." *Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1812 (2019).

Just as in § 586(e), once the filing fees are collected by the clerk, they are not refundable. *See In re Mullins*, 10 B.R. 346, 347 (9th Cir. BAP 1980); *In re Fortman*, 456 B.R. 370, 374 (Bankr. N.D. Ind. 2011). In other words, a debtor's ownership ceases when the "fees" are "collected."

### c.    The Statutory Scheme

Finally, the structure of the statutory scheme supports the plain language meaning of § 586(e). Regardless of whether the trustee is a standing trustee or one appointed under § 1302, she is supervised by the UST and tasked with the primary duty to serve the interests of creditors. § 586(c); *Andrews v. Loheit (In re Andrews)*, 49 F.3d 1404, 1407 (9th Cir. 1995).

Whether the trustee is a standing trustee or not, she plays a significant role in the administration of the estate prior to confirmation. The trustee must account for property received, investigate the debtor's financial affairs, examine and object to allowance of proofs of claim when

17

necessary, ensure that the debtor commences plan payments, appear at hearings, advise and assist debtors other than on legal matters, and perform additional duties if a debtor is engaged in business. § 1302(b), (c).

The trustee also has authority to object to confirmation of a plan and to seek dismissal of a case. § 1307; § 1325; *see In re Sisk*, 962 F.3d 1133, 1146 (9th Cir. 2020) (stating that confirmation requirements of § 1325(b) are triggered only upon an objection by an unsecured creditor or the trustee). And because "unsecured creditors often lack the resources and incentive to do so, trustees are frequently de facto gatekeepers to the bankruptcy court's adjudication of means test issues." *Rodriguez v. Bronitsky (In re Rodriguez)*, 620 B.R. 94, 103 (9th Cir. BAP 2020).

A standing trustee's compensation is fixed by the Attorney General pursuant to § 586, while a chapter 13 trustee appointed under § 1302 is awarded reasonable compensation and reimbursement of expenses by the bankruptcy court under § 330. Under the interpretation advanced by the dissent, when a case is dismissed prior to confirmation, a trustee appointed under § 1302 has an administrative claim under § 503(b), and will be paid prior to returning funds to the debtor, but a standing trustee will not be compensated for her work.

Given the importance of a chapter 13 trustee's preconfirmation duties to creditors and the bankruptcy system as a whole, and the identical obligations of a standing trustee and one appointed under § 1302, it makes little sense for Congress to provide for compensation of one and deny it the

18

other. Such a construction would result in misaligned incentives. For example, a standing trustee might be less likely to vigorously pursue objections to confirmation or dismissal when doing so would jeopardize her compensation.

The context of § 586, other bankruptcy fee statutes, and the statutory scheme of the Bankruptcy Code confirm that the plain meaning of "shall collect such percentage fee" means that a standing trustee obtains the fee upon receipt of each plan payment.

## D.     Section 586 Is Not Made Ambiguous By § 1326

Statutory language is ambiguous only if it "gives rise to more than one reasonable interpretation." *Woods v. Carey*, 722 F.3d 1177, 1181 (9th Cir. 2013) (quoting *DeGeorge v. U.S. Dist. Ct.*, 219 F.3d 930, 939 (9th Cir. 2000)); *see also United Sav. Ass'n of Tex.*, 484 U.S. at 365 ("[A] provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme . . . because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law.").

The dissent suggests that § 586 is silent about when the trustee's fee is vested or whether it is refundable, and like the *Evans* court, it finds ambiguity in the interplay between § 586 and § 1326. The purported ambiguity arises from the direction in § 1326(a)(2) that a trustee shall retain plan payments until confirmation or denial of confirmation. If the trustee's

19

fee is part of each plan payment, the argument goes, then the fee must be included in the payments to be retained under § 1326(a)(2).

But notably absent from the dissent is the identification of any mechanism by which the standing trustee takes ownership of the fee, other than by collecting such percentage fee under § 586(e). And, if the standing trustee takes ownership of the fee upon collecting it, the dissent offers no mechanism for disgorgement of the fee under the Bankruptcy Code.

Section 1326(a)(2) directs a trustee to retain plan payments until confirmation, then distribute those funds in accordance with the plan. But a standing trustee's percentage fee is not a disbursement made in accordance with the plan. The trustee is neither a creditor nor an administrative claimant and payment of her fee is not required as part of a plan under § 1322 or provided for in the priority scheme of § 507. *See Wagner v. Armstrong (In re Wagner)*, 36 F.3d 723, 726 (8th Cir. 1994) ("Trustee's fees are not 'debts provided for by the plan,' but are fees levied for services provided in administering the plan."); *In re Turner*, 168 B.R. 882, 887-88 (Bankr. W.D. Tex. 1994) (describing the trustee's fee as a "user fee," independent of the priority scheme, and payable prior to—and independent of—payments to creditors). This is consistent with Congress's intent to separate compensation of a standing trustee from the compensation and disbursement schemes under the Bankruptcy Code.

Section 1326(b) states that the percentage fee must be paid at or before payments to creditors under the plan, but it does not state that the

fee is paid under the plan. In fact, it expressly distinguishes the percentage fee from payments made to creditors and administrative claimants under a plan. The dissent argues that § 1326(b) has no bearing on this question if the case is dismissed prior to confirmation. But if the fee remains part of the payments to be retained until confirmation, as the dissent argues, then it must somehow be payable if the plan is confirmed.

Payment of the standing trustee's percentage fee is not governed by any provision in the Bankruptcy Code. It is governed exclusively by § 586. *See* § 326(b) (stating that compensation of a standing trustee is not subject to bankruptcy court approval or limitation); *see also Official Form 113, Chapter 13 Plan* ("Trustee's fees are governed by statute"); *Debtors' Amended Plan*, Case No. 1:19-bk-01424-NGH Dkt. 28 ("Trustee's fees are governed and paid as provided by 28 U.S.C. § 586.").

Because the percentage fee is not paid under a plan or by a provision of the Bankruptcy Code, the courts interpreting the statute as requiring the trustee to "collect and hold" the fee must implicitly look to § 586(e) for payment of the fee upon confirmation. But, § 586(e) contains only one mandate: that a standing trustee "shall collect such percentage fee from all payments received." It is unreasonable to interpret this language to mean "collect and hold" prior to confirmation, then rely on the same language to mean "obtain payment" upon confirmation.

The funds returnable to a debtor upon dismissal are those amounts allocated to pay creditors and administrative claims under the plan, after

21

the standing trustee has collected her percentage fee. Any construction that requires the trustee to return the percentage fee to a debtor upon dismissal contravenes the unambiguous mandate in § 586(e)(2) that a standing trustee "shall collect such percentage fee" from all payments under the plan. Furthermore, the percentage fee cannot be included in the payments retained by the trustee under § 1326(a)(2) because there is no mechanism under the Bankruptcy Code to disburse the fee upon confirmation.

Section 586(e)(2) is not made ambiguous when construed with § 1326. Interpreting it to require a standing trustee to "collect and hold" the percentage fee creates ambiguity and is therefore not a reasonable construction.

**E.  We Do Not Apply The Negative Inference Canon Or The Canon Against Surplusage To Overcome The Plain Language Of A Statute.**

We acknowledge that Congress expressly provided that upon dismissal prior to confirmation, a standing trustee serving in a chapter 12 case or under subchapter V of chapter 11 shall return plan payments to a debtor after deducting the percentage fee. § 1194(a)(3); § 1226(a)(2).[7] But

---

[7] Section 1194(a)(3) provides:

"If a plan is not confirmed, the trustee shall return any such payments to the debtor after deducting—

. . .

(3) any fee owing to the trustee."

Section 1226(a)(2) provides:

"If a plan is not confirmed, the trustee shall return any such payments to the

those provisions do not create a negative inference that a standing trustee must return the fee to a debtor in a chapter 13 case.

"[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983). However, this rule of construction is limited. *Field v. Mans*, 516 U.S. 59, 75 (1995); *see also Johnson v. United States*, 559 U.S. 133, 143 (2010) (rejecting a negative inference construction where a subsequent related statute was enacted eight years after the original statute and was thus not part of "*the same Act*").

Negative inferences from disparate provisions are "strongest when the portions of a statute treated differently had already been joined together and were being considered simultaneously when the language raising the implication was inserted." *Lindh v. Murphy*, 521 U.S. 320, 330 (1997); *see also Field*, 516 U.S. at 75 ("The more apparently deliberate the contrast, the stronger the inference, as applied, for example, to contrasting statutory sections originally enacted simultaneously in relevant respects.").

---

debtor, after deducting—

    . . .

       (2) if a standing trustee is serving in the case, the percentage fee fixed for such standing trustee."

"The rule is weakest when it suggests results strangely at odds with other textual pointers . . . ." *Field*, 516 U.S. at 75.

Congress enacted §§1194(a) and 1226(a) several years after enacting § 1326(a) and there is no evidence that it was considering a standing chapter 13 trustee when it included the language in the subsequent statutes. Moreover, it does not logically follow that the inclusion of this language means that a chapter 13 trustee cannot retain her fee upon dismissal.

Regardless of which chapter the standing trustee is serving under, her compensation is governed by § 586(e)(2). And just as in chapter 13, there is no provision in either chapter 12 or subchapter v of chapter 11 which authorizes the trustee to obtain payment of the fee if § 586(e)(2) means "collect and hold." The language in § 1194 and § 1226 is best understood as reiterating the fact that once plan payments are made to a standing trustee, she shall "collect such percentage fee" from those funds.

Although our interpretation of § 586(e)(2) may cause the language in § 1194(a) and § 1226(a) to be superfluous, "[s]urplusage does not always produce ambiguity and our preference for avoiding surplusage constructions is not absolute." *Lamie*, 540 U.S. at 536 (citing *Chickasaw Nation v. United States*, 534 U.S. 84, 94 (2001)); *see also Rimini St., Inc. v. Oracle USA, Inc.*, 139 S.Ct. 873, 881 (2019) ("Redundancy is not a silver bullet . . . . Sometimes the better overall reading of the statute contains some redundancy."). And Congress may have had reason to reiterate the

24

fact that the percentage fee is collected from all payments in cases under chapters where preconfirmation payments are permissible but not required.

The canon against surplusage "assists only where a competing interpretation gives effect 'to every clause and word of a statute.'" *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 385 (2013) (quoting *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 106 (2011)). And more importantly, we do not apply the canon against surplusage to contravene the plain language of a statute. *Lamie*, 540 U.S. at 536 ("applying the rule against surplusage is, absent other indications, inappropriate" where doing so would render otherwise plain language ambiguous).

Interpreting the statute as requiring the trustee to return the percentage fee upon dismissal directly contravenes the plain language of § 586(e)(2), which requires a standing trustee to collect the fee from all plan payments. Additionally, such an interpretation would create its own surplusage. If the fee remains part of the payments to be retained under § 1326(a), and is payable only upon confirmation, there is no reason for the trustee to collect the fee from each plan payment and "shall collect such percentage fee" becomes surplusage.

While we prefer a construction that gives effect to every word in a statutory scheme, we are aware that "redundancies are common in statutory drafting—sometimes in a congressional effort to be doubly sure, sometimes because of congressional inadvertence or lack of foresight, or

25

sometimes simply because of the shortcomings of human communication." *Barton v. Barr*, 140 S. Ct. 1442, 1453 (2020); *see also Conn. Nat'l Bank*, 503 U.S. at 253 ("Redundancies across statutes are not unusual events in drafting, and so long as there is no positive repugnancy between two laws, a court must give effect to both.") (cleaned up). And "[r]edundancy in one portion of a statute is not a license to rewrite or eviscerate another portion of the statute contrary to its text." *Barton*, 140 S. Ct. at 1453.

Despite the redundancy in § 1194 and § 1226(a)(2), we must "turn first to one, cardinal canon before all others[:] . . . a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank*, 503 U.S. at 253-54. "If judges could add to, remodel, update, or detract from old statutory terms inspired only by extratextual sources and our own imaginations, we would risk amending statutes outside the legislative process reserved for the people's representatives." *Bostock v. Clayton Cnty., Ga.*, 140 S. Ct. 1731, 1738, (2020).

The plain language meaning of § 586(e)(2) is the standing trustee obtains ownership of her percentage fee, and a debtor pays it, when each payment under the plan is received by the trustee.

## CONCLUSION

For the reasons stated above, we VACATE the bankruptcy court's order denying Trustee's fee and REMAND with instructions to enter the order consistent with this decision.

Concurrence begins on next page.

SPRAKER, Bankruptcy Judge, concurring:

Both the majority and dissent examine hoary principles of statutory construction, but to limited avail. Like the extra screw or bolt left over after assembling a piece of furniture or child's toy, our efforts to harmonize the applicable statutes are not wholly satisfying because however we construe them we are left with something that may work but does not fit well together. Ultimately, the question presented distills to this: should we insert additional language into an otherwise unambiguous statute or enforce that statute as written and render explicit statutory provisions in a separate, related statute surplus?

I write separately to emphasize the significance of the fees the standing trustee is statutorily obligated to collect under 28 U.S.C. § 586(e). Congress enacted a detailed statutory scheme governing compensation of bankruptcy professionals within the Bankruptcy Code. *See* §§ 326-330. Yet, Congress removed the compensation of standing trustees from the Bankruptcy Code and bankruptcy court oversight. Instead, it imposed a fee to be collected from each plan payment to fund their compensation. This fee is the cost to the debtor, payable to the trustee, for being in chapter 13. *In re Soussis*, 624 B.R. at 564 ("In essence, those who file for bankruptcy must pay a user fee to access the privileges and protections the Bankruptcy Code affords."). Like other user fees, payment does not depend upon the success of the endeavor that generates the fee. *See generally Green v. Bank of*

*America,* 2012 WL 5032414 (E.D. Cal. Oct. 17, 2012) (collecting cases discussing refund of filing fees after voluntary dismissal). The fee is severed from each plan payment upon the trustee's receipt. *In re Soussis,* 624 B.R. at 572.

For this reason, trustee compensation is not subject to, or controlled by, a chapter 13 plan. Section 1326, therefore, does not govern the collection of the standing trustee's fee except to confirm that the fee must be paid before or at the time of each payment to creditors. § 1326(b)(3). Far from tying the trustee's fee to plan confirmation, this requirement acknowledges the trustee's rights in the plan payments as they are received and disbursed to a debtor's creditors under a confirmed plan. The trustee, however, is not recognized as a creditor under the plan. *In re Turner,* 168 B.R. at 886. Accordingly, under § 586(e) the trustee is entitled to her fee as she receives the debtor's plan payments whether that plan is confirmed or not.

I disagree with the conclusion reached in *Evans* and the cases it relies upon as it contravenes the plain and ordinary meaning of § 586(e). I join the majority, not out of some personal sense of equity, but because I find its reasoning more natural and less damaging statutorily to give effect to the plain and ordinary meaning of § 586(e). This construction renders the statutory provisions in other bankruptcy chapters surplusage. I appreciate the significance of this construction, but it is the only one that harmonizes the statutes consistently with each other. The alternative is to read § 586(e) to require the trustee to collect *and hold* her fee. Such a construction does

not harmonize the statutes, but rather amends one. To add such a requirement does too much at the expense of § 586(e): one does not collect a fee only to return it – that is a deposit not a fee.

Still, I agree with the bankruptcy court's assessment in *In re Acevedo* that efforts to harmonize § 586(e) and the applicable provisions of the Bankruptcy Code yield results that are "not totally satisfying." 497 B.R. at 124. In *Acevedo*, the court agreed with the dissent that § 586(e) required the trustee to collect and hold the statutory fee but candidly acknowledged that this result was "based on a somewhat unnatural reading of the first sentence of § 586(e)(2)." *Id*. The *Acevedo* court nonetheless found that construction to be the more natural reading of § 1326(a). *Id*. at 125. We reach the opposite conclusion here. Yet, our reading of § 1326, as well as §§ 1194 and 1226, leaves me with a similar feeling as that expressed in *Acevedo*, only from the competing perspective.

Unfortunately, under either construction of the statutes at issue there always will be some piece that does not fit. I agree with the construction adopted by the majority as it harmonizes both statutes rather than amending one to produce a result contrary to its plain meaning.

Dissent begins on next page.

LAFFERTY, Bankruptcy Judge, dissenting:

I dissent. I would affirm the bankruptcy court's ruling that a chapter 13 trustee is not entitled to retain her statutory fee in those instances in which a case is dismissed prior to confirmation. And of equal importance, I would agree with that court, and with the numerous other courts (including one appellate panel) that have wrestled with this issue that, in the absence of express direction from Congress, in a multifaceted inquiry, judges ought to use all of the tools at their disposal, including the many and varied rules of statutory construction, as well as negative inferences from Congress' later decisions—twice—to address the issue presented here in other chapters of the Bankruptcy Code, to resolve this issue. And, in my view, a fair deployment of these tools leads, not as directly as one might like, but nonetheless reliably to the conclusion that the bankruptcy court reached in this instance.

But before I engage with the majority, an opening note.

My decision not to join in the majority's disposition does not reflect a fundamental disagreement about what I believe would be the "better" answer to this question from a purely policy standpoint. To the contrary, I agree with the majority in this case, and, I would wager, with the vast majority of judges who have struggled with the issue whether chapter 13 trustees **should** be able to retain amounts that would comprise their fees when a chapter 13 case is dismissed prior to confirmation—they should. That the plan payments must, with certain expressly enumerated

exceptions, be refunded to the debtor without payment of the trustee's fee, seems neither "fair and equitable" to me, to borrow a phrase—chapter 13 cases are not dismissed because of any "fault" by the trustee, who frequently will have worked extensively on the case prior to dismissal, and will not receive any recompense therefor—nor, from a practical standpoint, likely to create or support any incentives that are consistent with the purposes of the Bankruptcy Code or the Judicial Code. But I conclude that no matter how equitable it might be to have chapter 13 trustees be paid their fee from amounts paid in by the debtor but not distributed to creditors, the statutes directly relevant to this question do not so provide, and the content and context of related statutes support the opposite outcome.

And while I disagree with the majority's conclusion on the issue presented, I disagree more fundamentally, and vigorously, with the majority's approach in addressing the issue to be decided.

To that point, I readily acknowledge that while the significant majority of courts that have decided this issue have reached the same conclusion I do, they have done so mindful of, and struggling openly to make sense of, statutes that, in their view, do not directly address the question, and that use terminology that is not defined with precision, and is not, in their view, susceptible to only one interpretation.

Unfortunately, the majority has chosen a different approach to addressing this problem. All but disregarding not only the contrary

conclusions of the judges who have consistently reached a different result on this question, but also the comprehensive and careful thought processes that those judges have demonstrated in addressing this problem, the majority in this case has concluded that the answer to this question is obvious, and is found in what it sees as "unambiguous" language in one provision of what it believes to be the only relevant statute.

This asserted simplicity and the alleged pre-emptive nature of the Judicial Code on this question notwithstanding, the majority also employs contextual arguments that, while certainly interesting, are neither clearly determinative of the matter—there are in each instance perfectly rational counterarguments or contexts—nor, one would think, necessary. Nor is it clear why, particularly in light of the analytical inconsistency between resting on "unambiguous" language to resolve the interpretive question presented, and then selectively presenting arguments about context, the majority also apparently believes that it is permitted not merely to treat as surplusage or redundancy, as it essentially concedes it is doing, but, more candidly, essentially to ignore legislative history and clear statements of congressional intent via subsequent statutory amendments that argue strongly against the positions the majority seems bound to assert.

The majority's approach is, in my view, both conceptually flawed as a matter of statutory interpretation, and unconvincing in application to this problem.

## A. The statutory interpretation methods employed by the majority are flawed and ignore the fundamental purposes of such analysis.

The majority opinion's ruling concerning a trustee's right to retain fees in unconfirmed chapter 13 cases rests largely on two theses: (a) § 586 (and in particular § 586(e)) of the Judicial Code (title 28) is the sole source of authority on the question whether a chapter 13 trustee should be able to retain her fee when a case is dismissed prior to confirmation; and (b) the most important evidence for the source of that authority is Congress' choice of the word "collect" to describe how the trustee obtains her fee. The majority purports to utilize a well-worn rule of statutory construction, that we should look first to the "plain meaning" of the language that Congress has chosen in a statute. And if we can deduce the "plain meaning" of the language, we have answered the question for all purposes and need not consider contextual arguments, or compare the language and function of other statutes (here contained in separate titles of the United States Code) to determine the correct interpretation of the statutory language, or consider the effect of Congress' decision directly to address the issue presented here in the Bankruptcy Code. There are several problems with the majority's approach.

But there are some matters on which I believe everyone would agree.

First, the question presented: May chapter 13 trustees retain the amounts they collect as their fee in those instances in which the case is

dismissed prior to confirmation, and the creditors do not receive a distribution?

Second, does any statute directly and expressly resolve this question, i.e., is there a statute that tells us, directly and expressly, that a trustee may or may not retain such fees? Ignoring for these purposes the language in the Bankruptcy Code that disposes of this question in the context of chapter 12 cases and chapter 11 subchapter V cases (see section D, infra), the answer is, clearly and unambiguously, "No."

We are thus left with an interpretive task for which we need to utilize rules of statutory construction.

The goal of statutory construction is to divine the intent of Congress in enacting a statute. *U.S. Aviation Underwriters, Inc. v. Nabtesco Corp.*, 697 F.3d 1092, 1096 (9th Cir. 2012). And before we employ any "tools" of interpretation, we need to focus on the point of this exercise to determine what Congress was trying to accomplish, and what problems Congress was trying to address in enacting a statute or statutes, and to keep that goal before us at all times.

We may use various tools to accomplish this task. As an initial matter, we utilize the "plain meaning rule" to determine the intent of Congress, because, ordinarily, the simplest and most accurate and reliable method of deriving the meaning of a statute is to examine the actual language of the statute, using the normal meaning of the words Congress chose. *Mitchell v. United States*, 977 F.2d 1318, 1320 (1992) (citing *United*

34

*States v. Ron Pair Enters.*, 489 U.S. 235, 241 (1989)). And the simpler we can legitimately keep the interpretive process, the better. Simplicity avoids distorting the process through the addition of extraneous matters, including perhaps our own thoughts or biases.

Where, as here, we are attempting to discern not only the meaning of particular words, but also to glean how Congress was trying to address both trustee compensation **and** the disposition of funds that come into a bankruptcy process, we need to be exceptionally careful not artificially or facilely to predetermine this issue by an insistence on the sufficiency of the plain meaning rule as it applies to only one possible source of authority. *See United States v. Monia*, 317 U.S. 424, 431 (1943) (Frankfurter, J., dissenting) ("The notion that because the words of a statute are plain, its meaning is also plain, is merely pernicious oversimplification."). *See also Watt v. Alaska*, 451 U.S. 259, 266 (1981) ("[A]scertainment of the meaning apparent on the face of a single statute need not end the inquiry. This is because the plain-meaning rule is "rather an axiom of experience than a rule of law, and does not preclude consideration of persuasive evidence if it exists." (cleaned up)).

Accordingly, we must acknowledge that the rules of statutory construction do not end with the plain meaning rule, but also include requirements that we consider the relevant language in the context of the section in which it appears, and, as in this case, compared to language in other potentially relevant sections, including in other titles of the United

States Code. *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132-33 (2000). We undertake these further analyses to ensure that we consider as broadly as we should the direct statements as well as the nuances in the language Congress utilizes in enacting statutes, so that we both harmonize any apparent conflicts within the section or among different sections, and not render meaningless any part of the statute(s). *Bayview Hunters Point Cmty. Advocs. v. Metro. Transp. Comm'n*, 366 F.3d 692, 700 (9th Cir. 2004).

While we acknowledge the primacy and importance of the plain meaning rule, we must also acknowledge its potential hazards: enforced with the rigor on which the majority here insists, it has a pre-emptive effect, and forecloses the consideration of other sources of authority on what may be nuanced and multifaceted questions. For this reason, I submit that the plain meaning rule ought to be invoked to end the interpretive inquiry only in those cases in which we can fairly say that (a) Congress has chosen language that is not merely plausibly susceptible of one meaning that might yield a result we think correct, but that is not susceptible of a different or more limited meaning that would yield a different result, and (b) Congress has demonstrated an intent, through such language, fully and finally to determine the question presented.

**B.    One cannot rely on the "plain meaning" of the word "collect" as used in § 586(e) to infer that no portion of a standing trustee fee is refundable.**

In light of these concepts, the majority's insistence on the primacy of § 586 and the term "collect" is, from a purely theoretical standpoint, highly suspect. Indeed, for the majority's position and method to be valid, we must be willing to conclude not only that the word "collect" may have only one meaning, and that that meaning may support only one inference, and no other, but also that it is clear that Congress intended that this language be the sole and exclusive determinant of the question of the disposition of trustee's fees in unconfirmed chapter 13 cases. That's asking a lot from a word as flexible, commonplace and non-technical as "collect," and from a statute as focused and specific as the Judicial Code; not surprisingly, the term "collect," and § 586 more generally, are simply not up to this exclusionary interpretive task.

Utilizing the "plain meaning" motif, the majority reviews the critical phrase from § 586(e)(2) "shall collect such percentage fee" by referring to Black's Law Dictionary, and states that collect is defined as "to receive payment. To collect a debt or claim is to obtain payment or liquidation of it . . . ." From this definition and the definition of "fee" as "a charge fixed by law for services of public officers or for use of a privilege under control of government," the majority concludes that the ordinary meaning of "shall collect such percentage fee" is that a standing trustee obtains payment of

37

the statutory charge, and a debtor pays it to the trustee, from each payment under the plan.

There are at least two reasons why this exercise is not as conclusive as the majority would suggest. First, the language of the statute refers, plainly, to collecting such percentage fee; it says nothing about collecting payment for a debt or a claim, and to the extent that Black's Law Dictionary purports to add those concepts of "payment" and "satisfaction," it strays beyond the meaning of the phrase under review. Moreover, there is nothing in the statute, nor in the definition, that ascribes to the word "collect" an exclusive and irrefutable meaning that would include payment, as in immediate satisfaction of a claim. It could as well mean, for example, obtain the means of payment, as it apparently does with reference to the plan payments generally, which are surely also "collected," but not in any sense disposed of, or even earmarked, prior to confirmation of a plan.[8] Plain and unambiguous ought to mean, at a minimum, a common sense meaning that is clear from the words chosen and the immediate context of the provision, and that does not fairly admit of a contrary meaning. *Cf. Alaska Wilderness League v. U.S. EPA*, 727 F.3d 934, 938 (9th

---

[8] The majority's suggestion that this analysis is flawed because it addresses the meaning of the word "collect" as opposed to the phrase "collect such percentage fee," is mystifying: the difficulty here turns on what we mean by collect—does it mean "gather" or "take in," or does it mean, as it unquestionably does not here, "pay oneself immediately"? The nature of the object of that activity, the percentage fee, adds nothing to the analysis, one way or the other.

Cir. 2013) ("A statute is ambiguous if it is susceptible to more than one reasonable interpretation. The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." (cleaned up)).

Second, and more problematic, even were I to accept the meaning of the language "collect such percentage fee" as proposed by the majority, it simply would not answer the fundamental question posed by this matter—may the trustee retain such amounts collected that pertain to her fee, or must she refund them if a plan is not confirmed? Section 586(e)(2) specifies the amount upon which the percentage fee is to be computed and authorizes the standing trustee to "collect" it, but the statute "is silent with regard to whether confirmation is a prerequisite to distribution, or what effect pre-confirmation dismissal or conversion may have on the standing trustee's entitlement to her percentage fee." *In re Miranda*, 2001 WL 1538003, at *2; *see also In re Evans*, 615 B.R. at 297 ("Just as § 586(e) does not contemplate that once a fee is collected, any part of it should be refunded to the debtor, it also does not contemplate that any portion of the fee is irrevocable."). Indeed, this remaining uncertainty has been noted by virtually every case that has addressed this issue. *See, e.g., In re Lundy*, 2017 WL 4404271, at *7; *In re Dickens*, 513 B.R. at 911; *In re Acevedo*, 497 B.R. at 122-23.

Because "collect" reasonably seems to mean gather, or accept, but cannot and does not have an exclusive meaning regarding disposition of the fee "collected," almost all of the cases that have examined this issue have concluded that the answer to this question cannot be obtained merely by reference to § 586(e)(2). As such, § 586(e) must be read in conjunction with § 1326, which governs payments and disbursements associated with chapter 13 plans. *In re Miranda*, 2001 WL 1538003, at *2. And, because payments made under § 1326(a)(1)(A) necessarily include the trustee's percentage fee, interpreting § 586(e)(2)'s requirement to collect percentage fees as mandatory and irrevocable "creates a conflict with § 1326 because it requires the Trustee to collect and retain the percentage fee (or to pay any surplus to the UST System Fund) in the face of § 1326(a)(2)'s directive to return payments to the debtor if a plan is not confirmed." *In re Acevedo*, 497 B.R. at 122.

Examining the majority's method here, it appears that resort to the "plain meaning" and "unambiguous language" rubrics, flawed as they are conceptually and practically in this instance, are merely a means to avoid the interpretive difficulties that would result were one fairly to assess the interplay between §§ 586(e)(2) and 1326.

Moreover, when the task is to interpret language that might bear on other aspects of a separate but related statutory scheme, given the further rule of statutory construction that we should give effect to various parts of the statute and harmonize apparently conflicting provisions of statutes, we

40

should also inquire whether the language of the statute on which we are relying is clearly the only authoritative source—i.e., is it clearly intended to speak comprehensively and exclusively to the issue presented? If we cannot readily discern that, then we have to consider other apparently relevant statutes to assess their effect on the issue.[9]

As the Supreme Court recently reminded us, what we absolutely **cannot** do is rely on a plain meaning analysis to shortcut any further inquiry, and then engage in a selective and uncritical survey of the "context" that also ignores contrary inferences and inconvenient statutory language. *See Borden v. United States*, 141 S. Ct. 1817, 1829 (2021) ("A court does not get to delete inconvenient language and insert convenient language to yield the court's preferred meaning.").

And in examining this issue beyond the bounds and limits of the plain meaning rule as urged by the majority, I find ample evidence that Congress did not intend the Judicial Code to be the sole source of authority on this question or that the provisions of § 586 definitively resolve this question.

As an initial matter, even the most superficial review of the relevant

---

[9] Although the majority considers § 1326, it does so only to demonstrate that even in the context of the language of that section, its interpretation of the language of § 586(e)(2) and its determinations concerning the conclusiveness of that language mean that no further inquiry is really necessary. I will explore the "contextual inquiry" undertaken by the majority in the next section of this dissent and will demonstrate why that effort is neither objective nor reasonable in its conclusions.

legislative history associated with § 586 would have revealed Congress'
direct acknowledgement that while § 586 governs the calculation of trustee
fees, the question of the disposition of those fees is within the scope of the
Bankruptcy Code: "IF A PRIVATE STANDING TRUSTEE SERVES, HIS
FEE IS FIXED BY THE ATTORNEY GENERAL UNDER PROPOSED 28
U.S.C. 586(E), AND IT WILL BE PAYABLE UNDER PROPOSED 11 U.S.C.
1326(a)(2)." H.R. Rep. 95-595, at 328 (1977), *reprinted in* 1978 U.S.C.C.A.N.
5963, 6284.[10]

Lastly, the majority's attempt to dispose of Congress' clear direction
regarding a standing trustee's right to retain fees in chapter 12 (§ 1226) and
sub-chapter V of chapter 11 (§ 1194) as not even constituting a
"surplusage" problem, in light of the unambiguous and immutable
meaning of "collect," is equally flawed. As discussed in section D below,
and as many cases have noted, it is extremely difficult to review the
language of Bankruptcy Code §§ 1226 and 1194, each of which were
enacted after § 586(e)(2) (and after the original version of § 1326), and each
of which expressly provides for the trustee to retain amounts paid as her

---

[10] The majority suggests that Congress' intent for standing trustee fees to be
payable under the Bankruptcy Code changed, as evidenced by the legislative history of
the 1986 amendments to §§ 1302 and 1326, which states that appointment and
compensation of standing trustees are to be governed by § 586. But the 1986 history is
not at all inconsistent with the notion that trustee fees are **payable** under the
Bankruptcy Code. Section 586(e) simply governs the amount and source of standing
trustee fees. It does not resolve the question of when the standing trustee's right to
retain the fee is vested or whether the fee is refundable.

fee in the event the case is dismissed before confirmation, and not draw the negative inference that Congress intended the opposite result under § 1326.

Directly to this interpretive method issue, even if one does not accept the negative inference suggested by the subsequently added provisions (and one believes that the failure to update or amend the language of § 1326 was an oversight or inadvertent), it is impossible to dispute the more fundamental point established by the mere fact of the inclusion of such language in the later-enacted provisions: Congress acknowledged that the issue of retention or refund of the trustee's fees is absolutely a question delegated to, and that must be resolved by, the Bankruptcy Code. The majority's method is thoroughly flawed and cannot support the conclusion that the trustee must retain her fees in a chapter 13 case that is dismissed before confirmation.

## C. The statutory scheme and related statutes do not support the majority's conclusion that § 586 is the last word on whether standing trustee fees are refundable.

Among other things, § 586(e) authorizes the Attorney General to fix the fee for standing trustees, dictates the percentage and maximum amount of fees, and prescribes the source of payment of those fees: "from all payments received by such individual under plans in the cases under subchapter V of chapter 11 or chapter 12 or 13 of title 11 for which such individual serves as standing trustee." Section 586(e) does not purport to address when the standing trustee's right to retain the fee is vested or

43

whether the fee is refundable. Although the statute does not distinguish between confirmed or unconfirmed plans, that does not necessarily imply the result the majority urges. As the legislative history suggests, that question is addressed in title 11.

Turning to the majority's contrary conclusion, I consider its assertion that the statutory scheme and related statutes demonstrate that the percentage fee is irrevocable and that consideration of the Bankruptcy Code is unnecessary: first, that the formula for determining excess fees supports their interpretation; second, that fees are "separated" from amounts to be paid to creditors, and there is no provision for "recombining" them; and third, that statutes setting other types of fees are relevant in determining whether standing trustee fees are refundable.

While these assertions are not entirely implausible, they illustrate the analytical risk inherent in manufacturing a rationale to support the conclusion one would like to make. These assertions are speculative and unsupported by reference to any statutory text or legislative history, and in some cases represent extremely strained analogies.

I begin with the majority's assertion that the formula for determining excess fees presumes that the trustee keeps all the fees collected from plan payments because if she refunds some of those fees, her compensation ends up capped at an amount less than that fixed by statute, and "a trustee cannot pay excess fees to the UST unless she has first obtained ownership of those fees." While a lower than intended cap might plausibly result were

44

a trustee required to refund fees in unconfirmed cases, the majority cites no authority or any examples of where this has actually occurred in jurisdictions where courts do not permit the retention of chapter 13 standing trustee fees in an unconfirmed case.

Next, the majority asserts that § 586(e)(2) implicitly requires the trustee to allocate payments received under plans into two categories—one for payments to creditors and the other for statutory fees. The majority then argues that the lack of an explicit provision for "recombining" these amounts means that the funds representing the fees must be retained. The premise of this argument is that the word "collect" means "irrevocably collect." But nothing in the statute mandates either separation or irrevocability; rather, the notion of an irrevocable separation is merely the analytical predicate for the arguments the majority wishes to make. In fact, the Bankruptcy Code treats plan payments as a unit, even though those payments implicitly include trustee fees. The Code provides no remedy for a failure solely to pay trustee's fees. *See* § 1307(c)(4) (case may be converted or dismissed for "failure to commence making timely payments under section 1326 . . . [.]"). Moreover, standing trustees are required to keep accurate records of funds received and to allocate the amounts representing the statutory fee.[11] Given that money is fungible, fees may be

---

[11]     The trustee must transfer the percentage fee to the operating expense account at least monthly. If the plan is dismissed or converted prior to confirmation, the standing trustee must reverse payment of the

allocated on the trustee's books as earned or unearned. Nothing in the Code prohibits the "recombining" of amounts representing statutory fees and those representing funds to be paid to creditors.

The majority also attempts to analogize standing trustee fees to filing fees under 28 U.S.C. § 1930, pointing out that such fees are nonrefundable. It cites nonbinding authority characterizing statutory trustee fees as "user fees." *In re Turner*, 168 B.R. 882, 887-88 (Bankr. W.D. Tex. 1994). But this analogy is flawed—unlike § 586(e), no one would argue that the filing fee statute requires reference to other provisions of the United States Code that govern how and when they are paid. Moreover, filing fees are a threshold requirement, while statutory trustee fees are not: a chapter 13 case may be commenced without any payment to the trustee. And as noted above, the Code provides no remedy for a failure solely to pay trustee's fees.

Finally, as discussed below, if § 586(e) dictated that statutory trustee fees were nonrefundable or irrevocable, there would have been no need for Congress explicitly to address this issue in §§ 1226 and 1194 of the Bankruptcy Code.

---

percentage fee that had been collected upon receipt if there is controlling law in the district requiring such reversal or if (after consultation with the United States Trustee) the standing trustee determines that there are other grounds for concern in the district.

U.S. Dep't of Just., Exec. Office for the U.S. Tr., *Handbook for Chapter 13 Standing Trustees* 2-4 (revised October 1, 2012).

**D. Reading § 1326 in conjunction with related bankruptcy statutes leads to the conclusion that standing trustees are not entitled to retain statutory fees when a case is not confirmed.**

Although § 1326 fails to address whether a standing trustee must return any fees collected when a case is dismissed pre-confirmation, the conclusion that those fees must be returned is not inconsistent with the language of the statute or its context; and consideration of parallel statutes leads to a strong inference that the fees must be returned.

1. **Section 1326 is silent as to whether a standing trustee retains her fees if a case is dismissed pre-confirmation, and the context of the statute does not mandate an affirmative answer to that question.**

Of course, § 1326 does not overtly address the issue before the Panel—that is precisely the problem. Subsection (b) of § 1326 specifies that statutory fees and administrative claims must be paid before creditors are paid "under the plan." I disagree with the majority's conclusion that because that subsection does not state that the **fee** is paid under the plan, it is consistent with the conclusion that the trustee's collection of its fee under § 586(e)(2) is irrevocable. Payments are not made "under the plan" until a plan is confirmed. Subsection (b) has no bearing on the disposition of the funds representing statutory fees when a plan is not confirmed. That situation is addressed in subsection (a), which states that if a plan is not confirmed, the trustee must return all funds being held after deducting any allowed and unpaid administrative claims.

47

The majority asserts one contextual argument in support of its conclusion that subsection (a) implicitly recognizes that standing trustee fees are earned when collected. Specifically, the majority points out that if the trustee in the case is one appointed under § 1302, that trustee would be entitled to be paid, but a standing trustee would not. While at first glance this hardly seems like the right result, one must also consider that fees awarded to a trustee appointed under § 1302 are applied for on an individual basis and are awarded based on the actual hours expended and work accomplished in the case. In contrast, standing trustee compensation is purposely structured to streamline the process and achieve an overall balance:

> Rather than enmire the courts in the laborious business of setting fees in individual cases—many of them small in terms of assets, and some of them bone-dry—the Code and Title 28 authorized the Attorney General to fix the allowances of standing trustees on a yearly basis. An overall sense of balance thus became achievable. The "no asset" or "meagre assets" cases can be handled professionally, because the system is not dependent upon each individual matter to generate its own fees. To the contrary, the Attorney General considers the volume of cases committed to the trustee, reviews the trustee's program-related expenses for the prior year, and projects the amount of funds that will be handled during the upcoming year. This overall forecast—rather than the vicissitudes of each individual filing—becomes the cynosure of the fee calculation.

*In re Savage*, 67 B.R. 700, 706 (D.R.I. 1986).

48

Unlike the majority, I find it persuasive that Congress chose to address the refundability of statutory trustee fees in two parallel statutes, explicitly providing that those fees may be retained by the trustee in cases under chapter 12 and subchapter V of chapter 11. Consideration of the legislative history provides a strong inference that Congress intentionally omitted such a provision from § 1326(a).

In the 1984 amendments to the Code, Congress added to § 1326 the text, "If a plan is not confirmed, the trustee shall return any such payments to the debtor, after deducting any unpaid claim allowed under section 503(b)." The only relevant change made to that sentence in the ensuing years was the 2005 addition, after the word "payments," of the clause "not previously paid and not yet due and owing to creditors pursuant to paragraph (3)."

    **2.**    **Congress' later amendments to the Bankruptcy Code make clear that disposition of a standing trustee's fee is governed by the Bankruptcy Code and create a strong negative inference that such fees may not be paid to a chapter 13 trustee when a case is dismissed prior to confirmation.**

Congress has twice amended the Bankruptcy Code, in 1986 with respect to standing trustees under chapter 12, and in 2019 with respect to standing trustees under subchapter V of chapter 11—each of whose compensation is, like chapter 13 standing trustees, set by § 586(e) of the Judicial Code—directly to address the question whether such trustees may retain funds that comprise their statutory fees in cases dismissed before

49

confirmation of plans. In each case, the simple, direct, unambiguous statutory answer, contained in §§ 1226 and 1194, respectively, was "Yes."

As discussed below, I believe that these amendments create a clear negative inference that chapter 13 trustees may not retain such fees in cases with unconfirmed plans.

Not surprisingly, the majority disagrees and argues that such amendments are not indicative of congressional intent to deny chapter 13 trustees their fees, because the context of chapter 13, on the one hand, and chapter 12 and subchapter V of chapter 11, on the other, are different. I address these particular issues below.

But, more troublingly, the majority suggests that these subsequent amendments raise no fundamental interpretive issues, because the amendments in question were enacted after Congress enacted § 586(e) of the Judicial Code, which the majority believes is the sole authority on any questions concerning the amount of compensation and timing of payment to standing trustees. Therefore, the amendments do not constitute the "same law," and it cannot be inferred that Congress was attempting to address through these amendments an issue with the prior version of the statute. The majority therefore dismisses as a mere redundancy or a potential inconsistency any difference in treatment between fees payable to trustees under §§ 1226, 1326 and 1194 of the Bankruptcy Code.

I believe that this approach is seriously flawed.

50

The majority's insistence that § 586(e) is the sole source of authority for the issue presented in this matter and that subsequent amendments to the Bankruptcy Code constitute a "new" or "different" law creates a fatally circular error.  Whether § 586 is or isn't the sole source of authority in this matter is the principal interpretive question before us, and we shouldn't assume the answer; and, of course, §§ 1226 and 1194 are "newer" and "different" laws; indeed, that's the point—Congress chose to speak directly to this issue via amendments to the Bankruptcy Code.

That Congress chose to speak so directly and unambiguously to this exact question in enacting chapter 12 (contemporaneously with amendments to § 1326) and then again 33 years later in enacting subchapter V of chapter 11 does not make such actions mere redundancies or irrelevant later amendments; rather, they are the strongest possible indication of congressional intent to resolve this recurring issue through provisions of the Bankruptcy Code.  And that Congress chose so to act, without even a reference to the Judicial Code, or § 586(e), or the concept of "collect[ing] such percentage fee", is equally indicative that the Judicial Code is not the source of authority on the question whether standing trustees may retain their fees in chapter 13 cases dismissed before confirmation.

It would be difficult to imagine more direct and explicit indications of Congress' intent with respect to this fundamental interpretive issue.

51

In 1986, Congress enacted chapter 12 and included in § 1226 the provision that if a plan is not confirmed, the trustee must return payments received by the trustee after deducting administrative claims **and** standing trustee percentage fees. Although Congress also amended § 1326(b) in 1986, it did not amend § 1326(a).

And Congress amended the Code again in 2019 when it passed the Small Business Reorganization Act, which added § 1194 to subchapter V of chapter 11. Section 1194 is similar to § 1226 in providing that if a plan is not confirmed, the trustee must return any payments it is holding to the debtor after deducting unpaid administrative claims and "any fee owing to the trustee."[12] Again, Congress did not amend § 1326.

There are plausible policy reasons why Congress might have chosen to treat trustee fees differently in chapter 13. As noted above, the statutory percentage fee structure was designed to provide overall balance in trustee compensation. Chapter 13 is designed to be a relatively "fast-tracked" process. Payments must commence within 30 days of the earlier of the filing of the plan or the order for relief. 11 U.S.C. § 1326(a)(1). A plan must be filed within 14 days after the petition date, Rule 3015(b), and a confirmation hearing must be held between 20 and 45 days after the § 341(a) meeting of creditors. 11 U.S.C. § 1324. In contrast, chapter 11 and

_____

[12] Section 1194 also requires the trustee to deduct "any payment made for the purpose of providing adequate protection of an interest in property due to the holder of a secured claim[.]"

52

12 cases follow a more elongated timeline. Regardless of how the chapter
13 process plays out in the real world, Congress may have assumed that
there was little danger of a trustee being "cheated" out of compensation by
virtue of administering a case for months or years, only to have the case be
dismissed before confirmation.

### E. Conclusion

This dissent ends largely where it began: I agree with the majority
that, particularly in light of the practicalities and equities of administering
chapter 13 cases, the better answer to the question before us is that chapter
13 trustees should be permitted to retain their statutory fees if a case is
dismissed before confirmation. But I simply do not read the relevant
statutes to permit that result; and nor do most courts that have examined
the issue. Most importantly, the majority's approach—insisting that § 586
and the word "collect" are the sole authority on the issue, forcing strained
readings of related statutes, making faulty analogies to unrelated statutes,
and ignoring contrary indications in the legislative history and relevant
Bankruptcy Code provisions, make it impossible for me to join in their
conclusion, and cause me deeply to question the soundness of their
method.

For all the reasons outlined above, I would affirm.